IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

v.

Abdulaziz Abouelkheir

Case No. 2:26-mj-451
Judge Graham
Magistrate Judge Vascura

Opinion and Order

This matter is before the Court on the Government's motion to revoke a Release Order which granted Defendant Abdulaziz Abouelkheir's motion for pretrial release on bond. For the reasons that follow, the Court grants the Government's motion to revoke the Release Order.

I.

Defendant was arrested in Chicago, Illinois on July 14, 2026 pursuant to an arrest warrant issued by a magistrate judge of this Court. The arrest warrant followed the filing of a Criminal Complaint on July 13, 2026. In the Criminal Complaint, a task force officer with the Drug Enforcement Administration swore to facts concerning Defendant's alleged distribution of 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B)(vii).

On July 16, 2026, Defendant appeared for a detention hearing before Magistrate Judge Keri L. Holleb Hotaling of the United States District Court for the Northern District of Illinois. Over the opposition of the Government, Magistrate Judge Hotaling granted Defendant's oral motion for pretrial release. But she stayed the Release Order for one day to allow the Government to pursue a motion to revoke in this Court.

On July 17, 2026, the Government moved to stay the Release Order pending consideration of its simultaneously-filed motion to revoke. This Court granted the motion to stay pending the completion of briefing on the motion to revoke. The Government's motion to revoke now has been fully briefed.

In the meantime, Defendant has been placed in the custody of the United States Marshals Service and was transferred to the Southern District of Ohio. Defendant's preliminary hearing under Fed. R. Crim. P. 5.1 is set before a magistrate judge of this Court on August 18, 2026.

II.

Under 18 U.S.C. § 3145(a), if a person is "ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." The movant is entitled to prompt *de novo* review of the detention decision. *See United States v. Lidderdale*, No. 2:25-mj-270, 2025 WL 2388197, at *1 (S.D. Ohio Aug. 18, 2025).

The pretrial custodial status of a criminal defendant is governed by 18 U.S.C. § 3142, which provides that such person shall be detained upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government must show a risk of flight by a preponderance of the evidence and must show the defendant's dangerousness by clear and convincing evidence. *United States v. Hinton*, 113 Fed. App'x 76, 77 (6th Cir. 2004).

A rebuttable presumption arises that no conditions of pretrial release will reasonably assure the safety of any other person and the community if the judicial officer finds that, among other potential grounds, there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A). The Sixth Circuit has held that § 3142(e)(3)'s presumption in favor of detention "imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight." *Id.* (cleaned up).

In making the detention decision, a court considers the following four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The second factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

III.

The presumption in favor of pretrial detention applies here, as Defendant does not dispute that there is probable cause to believe he committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Specifically, the methamphetamine offense, as detailed in the Criminal Complaint, carries a maximum term of imprisonment of 40 years. *See* 21 U.S.C. § 841(b)(1)(B)(viii).

Defendant argues that several considerations rebut the presumption and support a conclusion that he is not a flight risk or a danger to any person or the community. Defendant is age 41 and maintains self-employment by running a search engine optimization company named Calm Bodies. He has lived in the Chicago area since age 6, when he arrived in the United States from Saudi Arabia with his parents. Defendant is a naturalized citizen, and he has strong ties to his parents and three siblings, all of whom reside and work in Chicago. Defendant emphasizes that he has no criminal history involving violence, threats of violence, or weapons.

The Pretrial Services Report largely supports Defendant's factual assertions, but it also provides a fuller picture which counterbalances the facts highlighted by Defendant. Though Defendant apparently has a good relationship with his parents and siblings, he is single and has no children, which indicates that leaving the Chicago area would be less problematic than Defendant suggests. And though Defendant has not committed any crimes of violence, he has been charged seven times in state court with various offenses, including theft, disorderly conduct, three DUIs, criminal damage to property, criminal trespass, and cannabis trafficking, which suggests a certain disregard for the safety and wellbeing of others.

Most persuasive to this Court's analysis is consideration of the affidavits submitted by the DEA officer in support of the Criminal Complaint and in support of the search and seizure warrant. These materials provide substantial evidence of the nature and circumstances of the alleged offense conduct, which involves a controlled substance. *See* Docs. 3, 3-1, 4-1. According to the affidavits, on seven occasions from November 2025 through June 2026, Defendant mailed parcels containing either cocaine or methamphetamine pills from United States post offices in Chicago to undercover agents

in central Ohio. Video surveillance footage shows Defendant mailing the parcels after undercover agents made purchases through Defendant's storefronts on the dark web. In particular, there is evidence linking Defendant to the Dark Web Market vendor named "UNTITLIST." Through various anonymous platforms, UNTITLIST sold cocaine advertised as "Columbian Cocaine – Off the Brick" and sold pills which contained detectable amounts of methamphetamine.

With respect to danger to the community, Defendant is alleged to have been distributing "pressed pills." These pills were made to mimic the appearance of the prescription drug Adderall, which is used to treat ADHD and narcolepsy. These pills pose a substantial danger to the public because they are branded as a prescription stimulant but in fact contain methamphetamine. *See United States v. Wagner*, __ F.4th __, Case No. 26-1294, p. 8 (6th Cir. Aug. 12, 2026) (a risk of physical violence is not needed to establish a defendant's dangerousness to others). The Government reports that, in addition to the 260 pills purchased by the undercover agents, 200 pressed pills were found in Defendant's vehicle when a search warrant was executed in connection with his arrest. These considerations are in addition to the danger to the public posed by Defendant's alleged cocaine distribution. *See Ston*e, 608 F.3d at 947 n.6 ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without an any indication that the defendant has engaged in violence. . . . [D]rug trafficking is a serious offense that, in itself, poses a danger to the community.") As outlined in the affidavits, undercover agents purchased approximately 75 grams of cocaine from Defendant, who marketed and sold "Columbian Cocaine – Off the Brick."

With respect to risk of flight, the affidavits contain many specific alleged facts concerning Defendant's extensive efforts to operate anonymously and evade detection. The drug purchases were made from Defendant through his dark web vendor UNTITLIST. Defendant utilized three anonymous online platforms (Dread, Telegram, The Onion Router network) to market cocaine. The only form of payment accepted by UNTITLIST was a cryptocurrency known as Monero (XMR). This form of cryptocurrency provides a high level of anonymity to vendors because online addresses are obfuscated to make the transactions untraceable.

Investigators ultimately used other means to connect Defendant to UNTITLIST, but found that he was engaged in a sophisticated process of laundering the cryptocurrency he obtained from drug sales. Large sums of money were laundered by Defendant. For instance, investigators determined that $437,000 passed through one of his many cryptocurrency deposit accounts. His access to funds of this magnitude, of course, is a factor which supports the conclusion that Defendant is a flight risk.

Also according to the affidavits, Defendant used his business, Calm Bodies, in support of his illicit drug activities. Calm Bodies – which the DEA officer says was actually a purported plastic surgery consultation business – had financial accounts which Defendant used to deposit the monies that he had originally received as Monero (XMR) cryptocurrency. Investigators found that Defendant used the accounts to engage in a large number of financial transactions which had nothing to do with plastic surgery, but for which they had reason to believe were tied to the sale of controlled substances.

Equally concerning for purposes of assessing Defendant's flight risk and danger to the public is Defendant's alleged hijacking of the Wi-Fi of another resident in his apartment building to help conduct his drug trafficking business. Once investigators were able to associate certain IP addresses with the undercover purchases made from UNTITLIST, those addresses led to a resident who lived one floor beneath Defendant. Investigators later determined that Defendant had hacked into the resident's Wi-Fi, without her knowledge, to conduct activities related the shipping of the drugs he sold. They also found evidence that Defendant had, over a year prior, researched how to hack into password-protected Wi-Fi services and manipulate the innocent user's IP addresses.

Defendant contends that there are conditions of release which would reasonably ensure the appearance of Defendant and the safety of the community. Those conditions are the ones which Magistrate Judge Hotaling announced in granting Defendant's motion for pretrial release: home confinement with a third-party custodian (Defendant's 67-year old father), no access to electronic devices, and surrender of his passport.

After examination of the materials submitted by the Government and the Pretrial Services Report, this Court disagrees that the noted conditions will reasonably ensure the appearance of Defendant and the safety of the community. Defendant's sophistication and his ability to conduct his affairs surreptitiously, to obtain unauthorized access to the internet, and to operate anonymously on the dark web are well-supported on the record. And with all due respect, the Court is not persuaded that confinement with his father will prevent Defendant – a self-sufficient, educated, healthy, 41-year old man with no spouse or children – from committing further criminal conduct or fleeing. *See Wagner*, __ F.4th __, Case No. 26-1294, pp. 15–16 (6th Cir. Aug. 12, 2026) ("Appointing Wagner's mother as a third-party custodian is no silver bullet, either. . . . [I]t's unreasonable to expect her to monitor Wagner's compliance with conditions of bail twenty-four hours a day, seven days a week.") (internal quotation marks omitted).

The Court thus finds that Defendant has not rebutted the presumption that no condition or combination of conditions will reasonably ensure the appearance of Defendant as required and the

safety of the community. The Court further finds that the Government has carried its burden of persuasion and that this is the sort of case in which "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" should not be disturbed. *Stone*, 608 F.3d at 945.

IV.

For the reasons stated above, the Government's motion to revoke the Release Order (Doc. 4) is GRANTED. Pursuant to 18 U.S.C. § 3142(i), the Court DIRECTS that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that Defendant be afforded a reasonable opportunity for private consultation with counsel; and that, on order of a court of the United States or on request of an attorney for the Government, Defendant be delivered to a United States marshal for the purpose of an appearance in connection with a court proceeding.

Date: August 14, 2026

*s/ James L. Graham*
James L. Graham
United States District Judge